It's 23-2139, United States versus Martinez-Espinoza. I'm sorry about that. No, thank you. Good morning, Your Honors. Amanda Skinner on behalf of Mr. Martinez-Espinoza. We are on plain error review in both cases in this consolidated appeal. And we believe that we can meet the standard on these specific narrow facts. I'd like to start with the reentry case. The government concedes prongs one and two of plain error. And where we diverge is on prong three, whether we can show a reasonable probability that Mr. Martinez-Espinoza would have elected to do something other than persist in that special binding 11C1C plea agreement. Well, it's not just that he would have proceeded in the 11C1C, because the court rejected that. It's whether he would have pled guilty. Yes, whether he would have done something different, which also could include going to trial or trying to negotiate a new deal. So we believe that we can. So just because he would try to negotiate a new deal, I mean, that seems like an insufficient burden on your part. Your Honor, there's no plain error, because he would have tried to negotiate a better deal. I mean, the district court gave him a better deal by rejecting the plea. And, Your Honor, clients do things for strange reasons. He had the right to reject this agreement for any reason, whether we thought it was a good one or not. I agree, and the government agrees with that. The government agrees that he could do it, and the government agrees that the district court erred by not telling him that he could withdraw. And the issue here was compounded, because then the district court misstated to him his option upon rejection. The district court didn't just say, I'm rejecting your plea agreement. Let's go forward to sentencing. I agree that would be a different situation. The district court told him, I'm rejecting your plea agreement. I'm trying to help you, because I don't think this gives you any benefit. Kind of similar to the poor district court judge in the Cano Varela case. He was trying to help that defendant by making these comments about what his sentence would be. And this court reversed and ordered assignment to a new district judge on remand because of the nature of the Rule 11 violation. And in this case, Mr. Martinez-Espinosa, he didn't have just the right to appeal. He could withdraw his plea agreement. And the reason I think we have good ground to argue that you should give him some credit for saying that he wanted to negotiate a new deal is because first, he had two cases. And second, he waived preliminary and detention hearing, two very important rights on the 1326 reentry charge in exchange for the government promising, in writing, to enter into good faith negotiations with him. And that- Well, they offered him a fast track. They offered him a fast track that, according to the district court, offered him no benefit. And I searched- Well, and that was because of his criminal record. That's correct, Your Honor. Prior reentry. Yes. And so I think that that comes into play because his criminal history was criminal history category six. We do not dispute that that made him ineligible for a portion of that binding plea agreement, the additional two levels under our district's fast track program. But he knew from the JSON data that was included in his PSR that everyone who was pleading guilty on these cases, the average or the middle was a below guideline sentence, 23 months. You have to compare apples to apples. I mean, this particular defendant had already illegally reentered, what, 10 times? And that's where his defense comes in, identity, Your Honor. The concern, I think, with this case is that fast track already has it in the name. These cases, these reentry cases, are fast tracked, streamlined, quickly moved through our district because it is a volume practice. But there is still a due process requirement. There is still a requirement that these clients are understanding what they're admitting, that they're voluntarily pleading guilty. And it's important to note that Mr. Martinez-Espinosa and his counsel knew he lost out on that minus two under the binding plea agreement when they filed their sentencing memo. That sentencing memo is our best evidence that Mr. Martinez-Espinosa, for whatever reason, wanted to plead guilty only pursuant to that special binding 11C1C plea agreement, whether we think it gave him a benefit or not. And that's because his counsel had the opportunity to ask to withdraw that agreement in the sentencing memo. Not only did he not do that, he also stated in the sentencing memo, I am bound by the booker bar in this plea agreement. I want to ask you for less, judge. I want to ask for below guideline. I think I have this great argument for Mr. Martinez-Espinosa, but I'm stuck with this plea agreement. So that's our best evidence that, again, for whatever reason, Mr. Martinez-Espinosa wanted to plead guilty pursuant to an agreement. So let me ask you this. I mean, I'm just looking at what the language has been that we've used that is your burden. And it is that you have to show a reasonable probability that but for the error, you would not have entered the plea. Yes. And you seem to change that. But for the error, you would have attempted to renegotiate your plea. That seems a little bit different, because ultimately, I mean, there are a lot of facts that suggest that maybe he would have entered the plea. This is a hard case to defend against on the merits. He had a lot of prior re-entries. I mean, the judge could have run up the score on him, potentially with an upward variance with his rap sheet of priors. So we are not afraid of the standard laid out in Dominguez-Benitez, OK? We agree that we have to show a reasonable probability that he would not have entered the guilty plea. And I think it's important to note that in Dominguez-Benitez, the Supreme Court rejected that Ninth Circuit standard, because it doesn't allow them to consider evidence tending to show that a misunderstanding was inconsequential to a defendant's decision. They want to get into reasonable probability so they can look at everything. We probably would not be here without the SR case, OK? The supervised release case. That is where the error becomes crystal clear. The government identifies three reasons for why this court should doubt Mr. Martinez's, Espinosa's, desire to potentially go forward with the trial if he can't negotiate a new deal. If it seemed like I was saying he did not want to go to trial, I'm not making that argument. His first step would be the first step that the magistrate and his attorney and his plea agreement told him he could do. Withdraw my plea of guilty and try to negotiate a new deal. As an officer of the court, I represented in a footnote that he has not made a representation that he would not go to trial, unlike the defendant in Dominguez-Benitez, unlike the defendant in the SR case, Fay, where they were beating down the door saying they wanted to admit to these things. We don't have anything in this record. The government identifies three reasons why a trial would be, in their view, a terrible choice for him. He doesn't have a defense. ID is the defense to illegal reentry charge. Did he request an identity hearing? No, but in terms of the trial, we cited the jury instructions. And he has 15 aliases and two convictions in the PSR that aren't even the aliases. So from my view, he has 15 more things to argue about than most defendants in a reentry case. Well, if you drop out those two, he's still got a boatload of prior illegal reentry. He does, and there's nothing in the record about the fingerprints that underpin those, the documents that underpin those. These cases are fast-tracked, because defendants are saying, for a benefit, I will admit to this without seeing full discovery from the government in many cases. And just anecdotally, I think the government would have to concede. They have dismissed reentry cases where they don't have the proof. Everybody, quote, knows it, but they don't have the proof when the defendant pushes past and says, no, I won't take your deal, or I'm ineligible for a deal. Why would I plead? And I think the problem here is that I could not find any case law from any circuit that says we impose upon a defendant an assumption that they would plead guilty in exchange for nothing. And the record here is that we have him, in the district court's view, pleading guilty in exchange for nothing. He's getting something. He's getting his appellate rights back. Well, but he had more than that. And so I think I don't want to jump into prong four too quickly, but that's where the integrity of judicial proceedings comes in. If you took a regular person off the street and brought them into court and said, we gave this guy a special deal on a new reentry in exchange for these benefits, and we told him he could withdraw the plea and go to trial if the judge said, I'm not going to take this deal. And then that person watches the judge address him and say, this agreement gives you no benefit, so I'm withdrawing it. I'm refusing to accept it. You have your appeal rights back, and now I'm going to use the admission you made in connection with that deal to find you violated your supervised release. I'm going to sentence you and give you more time consecutive than concurrent. He got the wrong side of that math problem on 21 months, so he has something to fight for. Let me ask you this. On the supervised release violation, is the fact that in the reentry case that he pled guilty, whether it was withdrawn later or the district court rejected it later or not, but that he asserted in his plea that he was guilty, he admitted it, he had to admit the conduct, is that sufficient evidence for the district court? Even if he later withdrew the plea, could the district court use that evidence to find that he violated? Under these facts, no, because that admission was solely to the new reentry charge. And he has an identity issue. But that's suggesting, I mean, he has to affirm in his plea that the admissions he's making in there are true. He doesn't get to say, I just admitted those because I wanted to get this thing over with. I mean, maybe he can say that. Then maybe there's a contradictory evidence. But when he enters his plea, he's that those things happened, that they are true. This is me. It is true. I did it. Sentence me under the C1C. And the only way that those admissions could be used against him if the district court had gone through the Rule 11 colloquy and he had withdrawn his plea would be if there was another proceeding. I mean, in the SR, it just doesn't make sense to assume that he would withdraw his plea and then proceed to sentencing on the SR when he admitted nothing. His initial appearance, show cause hearing, and detention hearing on the SR were all wrapped up into one hearing. It is common. Let me interrupt for a minute. He can waive a hearing on the supervised release, right? Absolutely. Isn't the transcript pretty clear that his attorney, in fact, waived? And we don't have any. To ask defense counsel, he said, the facts alleged in the revocation petition are the same facts that Mr. Martinez-Espinosa admitted when he pled guilty to reentry. And then he asked, defense counsel said, for that reason, is there any need to go forward with the colloquy on the petition? And defense counsel said, no, there's not. So this is where the volume practice comes in again. And the court said something else in that discussion. Now, similar to the earlier case, the facts alleged in the petition are the same as the facts admitted when he pled to the reentry. This is happening over and over in our district, where we are skipping colloquies. There is no definition for it. Well, that's on you, though. That's on your team. You should say, judge, I want my hearing. Understood, Your Honor. And that's why, on these facts, we are not afraid of plain error. We are not afraid of the standard laid out in Dominguez-Benitez, because it really, I don't know a better term than a bait and switch. I mean, maybe what you have here is a 2255. And I don't think we need to get into that, because this court can remand, based on the Rule 11 violations and the defenses that he had at a trial, including going to trial because he wants to exercise his rights, because he doesn't understand how this happened to him when a judge, a magistrate judge, and his own attorney, and the plea agreement, told him, you could withdraw this deal and decide, I just want to fight it. I just want to fight it and give it a chance at trial. So he would have had. But that and the fact that all of these things told him that if the court rejects your 11C3 plea, you can withdraw. Doesn't that count against him? In terms of, I mean, he knew. He was told repeatedly. In Dominguez-Benitez, it was used against him in his non-binding plea agreement that he knew he couldn't withdraw. But here, we have it written into the plea agreement that he can withdraw. No one gives him the opportunity. I've never seen a defendant. I mean, it cuts both ways. Because when he's being saying, do you want to waive your hearing, when they're moving forward, he's been told, I think, three times in different formats that if this is rejected, you can withdraw. Understood, Your Honor. And on this record, we think that there is ample evidence with his identity, defenses that he would have, the Jason data, that he would have withdrawn his plea. He would have had chances at trial. And I see my time is up. Thank you. Thank you. Good morning. May it please the court. Emil Keeney for the United States. I'm going to address some of the points that my colleague for the defense raised. But of course, I'm happy to go wherever you want to go. Well, I guess one question I have, wouldn't it be fairly simple to just go back and inform him correctly under Rule 11 of what his options were and see whether he'll take a plea or he wants to go to trial? Yeah, it would be very, very simple. I thought of that myself. And we considered doing that beforehand. Probably cheaper than coming up here. Right. I think that part of the difficulty for us in doing that is it's longstanding DOJ policy to defend cases on appeal where we think we have a reasonable basis to ask for affirmance. So in this case, I looked at that before the briefing even occurred at Ms. Skinner's request. And the law is fairly clear that a defendant has to satisfy the third prong of plain error analysis. And I thought I had a good faith argument for why you could not. So yeah, there are some cases where you could say, well, wouldn't this be easier? But I think there's a lot of reasons. There's some good reasons for our policy. I mean, to ensure that we treat equal cases alike all across the country and so forth. And also encourage, I think one reason for it is to encourage defendants to object to things when there's time to do something about it. So I think the inquiry is really the plain error inquiry, not necessarily what would be easier. And I think if it were that easy, it would be easy to articulate some reason why the third error prong was satisfied. I don't think defendant has done that. But I think you want to ask me a question. You're right. Yes. So doesn't the fact that the district court sort of took the choices away from the defendant make a difference here? This isn't a case where maybe even nothing was said. Maybe where the court said, I'm not going to accept your plea, but do you still want to proceed to sentencing? And counsel says, yes. And so the court never says, hey, you have the right to withdraw. You have the right to a trial. You have the right to go back to Mr. Keeney and renegotiate your plea or whatever. But in this case, the district judge basically said, hey, man, I'm going to do you a favor. I'm not going to accept this. I'm going to do you a favor. I'm going to give you a better deal. I'm going to reject the plea. We're going to go to sentencing, and you'll have the right to appeal. Doesn't that sort of take something away from the judge to never know if he was going to go to trial, if he was going to try to renegotiate, if he was going to want to withdraw his plea? Well, yeah, we've conceded the first two prongs. That was taken away from him. I think in any way. I know you agree with that, but I'm saying there's an aggravating step. And it's that the district court sort of not only didn't offer him the choice, but sort of made it seem like there wasn't a choice, and that he was actually doing something for him. Yeah. I didn't read the record that way. I thought with the district court, he did think he was doing him a favor. And I think it was a simple oversight not to read him the warnings that Rule 11c5 requires. I don't think he was trying to mislead the defendant or say anything like that. I agree. I don't think he was either. But we've got to look at it from what the defendant might have thought. Right. He might have thought, well, I think, though, he still needs to prove. He needs to at least articulate some reason why the third prong is satisfied, even though he said, I've got 11 aliases. They probably couldn't even prove it was me. So if I did decide to go to trial, I could probably prevail by claiming I was someone else. I don't think that would work for this reason. The information only charged with illegal entry after removal. He was that the charged removal in the information is the December 2021 removal. That was a constant. That he was removed in 2021 after being released from Arizona, from custody from his Arizona 2020 illegal reentry conviction. He was convicted in Arizona under his real name. Seems pretty unlikely that once he's released from prison to the custody of ICE to be removed, that they would do so under some different name from the one that he was convicted. I don't really see any possibility of an identity defense there. You're saying that whether you got all the aliases, or even the fact of the aliases, is irrelevant to the charged crime. That's correct. I think it could be relevant in other situations if we had charged him with, say, illegal reentry after a previous conviction of a felony, say. And he said, well, that, at least maybe, and if the charged felony was one of those where he had been convicted under an alias, as there were two of them in this case, that might be, that would be a stronger case, I would think. So the other defenses he's raised is, well, I would have, the supervised release proceeding is what really would have made me go to trial or choose something different. But even then, he would still have to have a defense to the charge, the underlying charge, because that's the same basis for a supervised release violation. So I think we're just back at the start. What do we do with the confession that was made in connection with the plea that was rejected? Can we rely, can the district court rely on the facts that he admitted in connection with the rejected plea for purposes of finding him guilty on the supervised release charge? Right. I think so. I mean, he was advised that his plea. Well, did we have case law? I mean, you think so. What support do you have for that? Well, I'm not sure that I have a case that specifically addresses that scenario. So it's not that I'm relying on a case. I mean, you do have Faye, which considers a guilty plea. But in Faye, it was a prior state conviction as well. So there's not only a plea, but a conviction. So that is a little bit different. But it is consistent with what we're saying. I think he was also advised at his plea hearing that, and that's at page 30 of volume 3 of the record in the illegal reentry case, that he was told that if he pleas, this will be part of his criminal history and can be used against him in the future. I also think since we're on plain error. But it's if he pleas, right? Right. And his plea was rejected. No, his plea agreement was rejected, Your Honor. The hearing they were talking about at the plea hearing, when he was pleading guilty, they were talking about that passage talks about his actual guilty plea as opposed to the agreement. So at his plea hearing, where he entered the plea agreement, where the plea agreement was, I'm it was presented to the MJ, all that good stuff. Was he sworn in the discussion at the plea agreement? Do you know? I mean, that's standard protocol, isn't it? It's standard practice. And the defense hasn't raised that as an argument. But also, I'm sorry, did you have another part of your question? No. OK. Is there a record of that hearing? Yes, there is. I have it. Is it in our record? It is. It's in volume three. I'm not sure that the hearings are in the right order. I think maybe the sentencing hearing is placed before the plea hearing and the transcript. But you'll be able to find it there, for sure. I think that the lack of any This is the magistrate walking through the colloquy. That was a magistrate walking through the colloquy, yes, sir. So I think the lack, going back to your point about the lack of any specific case law about whether the district court could use that plea, I think that weighs against the defendant here. Because we're on plain error of view. If there's no plain authority saying that's improper, then I think that's a failure to establish the second prong on that point. Sorry, I lost my train of thought. But I also think that the district court was correct, or at least on plain error of review, I should say, because the district court didn't specifically consider it. I think the totality of the circumstances shows that he did admit the supervised release violation. I mean, you don't just have the guilty plea. You also have the colloquy that Judge McHugh referred to at the beginning where, and you could even go back a few lines earlier, the district court specifically prefaces his remarks by saying he didn't admit to these allegations, right? And defense counsel says no. And then he goes into talking about the fact that he had already pleaded guilty to the offense, which was the basis for the supervised release charge. So the idea that the colloquy he's talking about doesn't have to do with admission of the supervised release violation, and that defense counsel didn't understand that to be the case, I don't think that's supported by the record. You also have other indications in the record. Later on in the hearing, the defendant, he apologizes. That's for his conduct. That's one of the factors that Faye relied on. And then the district court specifically says at page 22 of the hearing, that's in volume three, you've admitted to your, here, we're going to talk about the supervised release violation now. And he says, to your credit, you admitted the violation. Well, that's as strong a signal as any to defense counsel, maybe even the defendant himself, but certainly to defense counsel. If he didn't think there was admission to the supervised release violation, that would be the time to say, whoa, what are you talking about, Your Honor? So in sum, I don't think they can satisfy the third prong on either of these claims. We would ask to affirm. I'll see the rest of my time unless you have other questions. Doesn't appear so. OK. Thank you very much. Thank you. Did you have any time? No. OK. We will take this matter under advisement.